UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 17-81221-CV-ALTMAN
MAGISTRATE JUDGE REID

ANTHONY LATERZA,

     Petitioner,

v.

MARK S. INCH[1],

     Respondent.

_____/

## REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE ON PETITION FOR WRIT OF HABEAS CORPUS

### I. Introduction

Anthony Laterza, who is presently confined at Mayo Correctional Institution East, in Mayo, Florida, has filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, attacking his convictions in case number 2011-CF-1935 and 2016-CF-2724 from the Fifteenth Judicial Circuit Court for Palm Beach County.

This case has been referred to the undersigned for consideration and report pursuant to 28 U.S.C. § 636(b)(1)(B) and Rules 8 and 10 of the Rules Governing

---

[1] Julie L. Jones is no longer the Secretary of the Department of Corrections. Mark S. Inch is now the proper respondent in this proceeding. Inch should, therefore, "automatically" be substituted as a party under Federal Rule of Civil Procedure 25(d)(1). The Clerk is directed to docket and change the designation of the Respondent

Section 2254 Cases in the United States District Courts. For the reasons explained in this Report, the petition should be denied.

## II. Procedural History

The Petitioner entered into a plea agreement with the State on April 29, 2016 addressing two criminal cases. (DE# 15-2, p. 251-254). The plea negotiations were recorded and transcribed pursuant to Florida Rule of Criminal Procedure 3.171. (DE# 15-2, p. 16-1, 16-2). Within the plea agreement it was expressed that: "The intent of the State and the Defendant is that these sentences run concurrently with the Defendant's Federal Sentence in 02-14072-CR-Middlebrooks." The Petitioner's guilty plea was accepted the day it was entered with the understanding that his sentencing would occur after the federal sentencing was complete. (DE# 16-3).

On July 5, 2016 the Petitioner was adjudicated guilty in his two state cases. In case number 2011-CF-1935, the Petitioner was convicted of racketeering and money laundering. (DE# 15-2, p. 268) In case number 2016-CF-2724, the Petitioner was convicted of tampering with a witness. (DE# 15-2, p. 274). He was sentenced in both cases to concurrent ten-year terms of imprisonment. (DE# 15-2, p. 271-272, 277-278). The sentences in the state cases were entered on July 6, 2016, in the manner agreed to in the plea agreement. (DE# 15-2, p. 251).

The Petitioner later filed two motions to withdraw his state guilty plea. (DE# 15-2, p. 280-284). In the first of these motions, the Petitioner argued that he had

entered the plea under coercion when the State threatened to arrest his wife. In the second motion, the Petitioner argued that the plea agreement had been breached when his federal sentence was not made to run concurrent to his state sentence. He explained that on May 27, 2016, the federal court had ordered that his sentence of imprisonment be served concurrent with the state sentences but ordered that the five-year period of supervised release be served consecutive to the state sentence.[2]

The state opposed to the motions to withdraw the plea, relying upon the transcripts of the plea negotiations and change of plea hearing. (DE# 15-3, p. 1- 170). The state argued that the records showed that the Petitioner knew that the state prosecutor and the state judge could not require the federal court to impose a concurrent sentence.

The motions to withdraw the plea were denied. (DE# 15-3, p. 221-222). In denying the motion, the court adopted and incorporated the state's response and record attachments. The Petitioner appealed. He argued that the plea agreement was void for specific nonperformance by the imposition of a consecutive federal

---

[2] The federal court sentenced Laterza to 18 months of imprisonment, to be served concurrent with his state court sentences, followed by a five-year supervised release term. U. S. Dist. Ct. Case No. 02-CR-14072, DE## 240, 277. The supervised release term was ordered "to run consecutive to any term of probation or supervision imposed in the Defendant's State of Florida cases, docket numbers 11CF001935A and 16CF002724." *Id.*

sentence. The state appellate court affirmed the denial of the motions to withdraw the plea. (DE# 15-4, p. 101).

The Petitioner filed the instant § 2254 petition on November 1, 2017. (DE# 1). He raises a single claim, arguing that his plea was rendered involuntary because the federal court ordered that his supervised release term be served consecutive to the state sentence of incarceration.

### III. Statute of Limitations and Exhaustion

The state properly concedes that the petition was timely filed. The State has also not challenged the petition for lack of exhaustion.

### IV. Standard of Review

A prisoner in state custody may not be granted a writ of habeas corpus for any claim that was adjudicated on the merits in state court unless the state court's decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "based on an unreasonable determination of the facts in light of the evidence presented" to the State court. 28 U.S.C. § 2254(d)(1), (2); *see Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *Fugate v. Head*, 261 F.3d 1206, 1215-16 (11th Cir. 2001).

A state court decision is "contrary to" or an "unreasonable application of" the Supreme Court's clearly established precedent within the meaning of § 2254(d)(1)

only if the state court applies a rule that contradicts the governing law as set forth in Supreme Court case law, or if the state court confronts a set of facts that are materially indistinguishable from those in a decision of the Supreme Court and nevertheless arrives at a result different from Supreme Court precedent. *Brown v. Payton*, 544 U.S. 133, 141 (2005); *Williams*, 529 U.S. at 405-06. In the habeas context, clearly established federal law refers to the holdings of the Supreme Court's decisions as of the time of the relevant state-court decision. *Hall v. Head*, 310 F.3d 683, 690 (11th Cir. 2002) (citing *Williams*, 529 U.S. at 412). However, in adjudicating a petitioner's claim, the state court does not need to cite Supreme Court decisions and the state court need not even be aware of the Supreme Court cases. *See Early v. Packer*, 537 U.S. 3, 8 (2002); *Parker v. Sec'y, Dep't of Corr.*, 331 F.3d 764, 775-76 (11th Cir. 2003).

So long as neither the reasoning nor the result of the state court decision contradicts Supreme Court decisions, the state court's decision will not be disturbed. *Id*. Further, a federal court must presume the correctness of the state court's factual findings unless the petitioner overcomes them by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001).

More recently, the Supreme Court in *Wilson v. Sellers*, ___ U.S.___, 138 S.Ct. 1188, 1194 (2018), concluded there is a "look through" presumption in federal habeas corpus law, as silence implies consent. *See also Kernan v. Hinojosa*, __ U.S.

___, 136 S.Ct. 1603, 1605-1606 (2016)(per curiam)(adopting the presumption that silence implies consent, but refusing to impose an irrebuttable presumption). Where the state court's adjudication on the merits of a claim is unaccompanied by an explanation, the Supreme Court instructs that:

> [T]he federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.

*Wilson v. Sellers*, 138 S.Ct. at 1192. In other words, if the last state court to decide a prisoner's federal claim provides an explanation for its merits-based decision in a reasoned opinion, "a federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable." *Id*. However, if the relevant state-court decision on the merits is not accompanied by a reasoned opinion, because it was summarily affirmed or denied, a federal court "should 'look through' the unexplained decision to the last state-court decision that does provide a relevant rationale." *Id.*

The presumption, however, may be rebutted by showing the state court's adjudication most likely relied on different grounds than the lower state court's reasoned decision, such as persuasive alternative grounds briefed or argued to the higher court or obvious in the record. *Id*. at 1192, 1196. "Where there are convincing grounds to believe the silent record had a different basis for its decision than the

analysis followed by the previous court, the federal habeas court is free, as we have said, to find to the contrary." *Id*. at 1197.

Moreover, the Supreme Court repeatedly has admonished that "[t]he petitioner carries the burden of proof" and that the §2254(d)(1) standard is a high hurdle to overcome. *See Bobby v. Dixon*, 565 U.S. 23, 24 (2011)(quoting *Richter*, 560 U.S. at 102-103 (quotation marks omitted)); *Cullen v. Pinholster*, 563 U.S. 170, 180 131 (2011) (acknowledging that Section 2254(d) places a difficult burden of proof on the petitioner); *Renico*, 559 U.S. at 777 ("AEDPA prevents defendants - and federal courts - from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts."); *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002)(Section 2254(d) "demands that state-court decisions be given the benefit of the doubt.").  *See also Rimmer v. Sec'y, Fla. Dep't of Corr's*, 876 F.3d 1039, 1053 (11th Cir. 2017)(opining that to reach the level of an unreasonable application of federal law, the ruling must be objectively unreasonable, not merely wrong or even clear error).

Thus, state court decisions are afforded a strong presumption of deference even when the state court adjudicates a petitioner's claim summarily—without an accompanying statement of reasons. *Richter*, 560 U.S. at 96-100 (concluding that the summary nature of a state court's decision does not lessen the deference that it is due); *Gill v. Mecusker*, 633 F.3d 1272, 1288 (11th Cir. 2011) (acknowledging the

well-settled principle that summary affirmances are presumed adjudicated on the merits and warrant deference, *citing Richter*, 560 U.S. at 100-101 and *Wright v. Sec'y for the Dep't of Corr's*, 278 F.3d 1245, 1254 (11th Cir. 2002)). *See also Renico*, 559 U.S. at 773 ("AEDPA ... imposes a highly deferential standard for evaluating state-court rulings ... and demands that state-court decisions be given the benefit of the doubt." (citations and internal quotation marks omitted)).

Because the "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court, *Burt v. Titlow*, 571 U.S. 12, 19 (2013), federal courts can "grant habeas relief only when a state court blundered in a manner so 'well understood and comprehended in existing law' and 'was so lacking in justification' that 'there is no possibility fair-minded jurists could disagree.'" *Tharpe v. Warden*, 834 F.3d 1323, 1338 (11th Cir. 2016). This standard is "meant to be" a "difficult" one to meet. *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

## V. Discussion

The Petitioner has presented a single claim. He argues that the State violated the terms of the plea agreement rendering his plea involuntary. He contends that the plea agreement required that his state and federal sentences be concurrent and that when the federal court made his supervised release term consecutive to the state sentence, the plea agreement was rendered void.

The Petitioner presented this claim in state court in a motion to withdraw his guilty plea. The state court denied the motion, adopting the reasoning found in the State's response. In its response the State had argued that the Petitioner had been advised by both his standby counsel and the State that the State could do nothing more than recommend to the federal court that the sentences should run concurrently. The State noted that the state court had recommended that both the state and federal sentences would run concurrently and that the federal court had made the incarcerative portion of the federal sentence concurrent with the state sentence. Furthermore, it was noted that the federal court had designated the Florida Department of Corrections as an appropriate facility for the service of the Petitioner's federal sentence. The State also argued that the term of supervised release was not a part of the incarcerative sentence but was supervision that was required to be imposed after his release from any incarcerative sentence.

The state court's denial of this claim was not contrary to or an unreasonable application of controlling Supreme Court precedent. The Petitioner argues that this case is controlled by *Santobello v. New York*, 404 U.S. 257 (1971). In *Santobello*, the Court found that "when a guilty plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled."

Here the Petitioner was well aware that the state could not guarantee that his federal sentence would be made concurrent with his state sentence. It was explained to him during the plea negotiations that the state court had no control over the federal court's sentencing decisions. Since the prosecutor's promise of a concurrent sentence was made with an express caveat that the state had no control over the federal sentence, it cannot be said that the Petitioner's guilty plea was induced by a guarantee of concurrent sentences.

The Petitioner's claims that the state court should not have considered the transcripts of the plea negotiations to interpret the terms of the plea agreement. However, the Eleventh Circuit has recognized that when interpreting plea agreements "a 'hyper technical reading of the written agreement' and 'a rigidly literal approach in the construction of language' should not be accepted." *United States v. Jefferies*, 908 F.2d 1520, 1523 (11th Cir. 1990)(quoting *In re Arnet*, 804 F.2d 1200, 1203 (11th Cir. 1986). Furthermore, "the written agreement should be viewed 'against the background of the negotiations' and should not be interpreted to 'directly contradict[t] [an] oral understanding." *Id.* In this case, the plea negotiations were recorded and transcribed. The Florida Rules of Criminal Procedure requires that plea negotiations with an unrepresented defendant be recorded. Fla. R. Crim. P. 3.171. Since the Petitioner was unrepresented during plea negotiations, the

negotiations between the Petitioner and the State were recorded and made a part of the record.

The recorded plea negotiations occurred over two days. The first session occurred on April 21, 2016. (DE# 16-1). At the start of the plea negotiations, the Petitioner stated that he would like to get his case resolved. (DE# 16-1, p. 4). One of the first issues raised by the Petitioner was his wife. (DE# 16-1, p. 6-7). The prosecutor conveyed that he was not going to negotiate with the Petitioner regarding his wife. (DE# 16-1, p. 7). The prosecutor explained the sentence the Petitioner might face if he lost at trial. (DE# 16-1, p. 9). After explaining what he saw as a weakness in the State's case, the Petitioner asked for 84 months and stated that he would plead the next day if the State agreed to a 90-month cap. (DE# 16-1, p. 19). The prosecutor replied that the prior 90-month offer had been revoked and that he was intending to take the case to trial because he did not believe that the Petitioner wanted to resolve the case. (DE# 16-1, p. 20). He reminded the Petitioner that he was facing a life sentence with a 33-year minimum mandatory term. (DE# 16-1, p. 21). The prosecutor, when pressed by the Petitioner, offered 25 years. (DE# 16-1, p. 37). The Petitioner rejected the offer and countered that he would agree to plead guilty if the state agreed to ask for sentence of no more than 10 years. (DE# 16-1, p. 37). The prosecutor countered with an offer of a 20-year cap. (DE# 16-1, p. 37). The

11

Petitioner rejected that offer. (DE# 16-1, p. 37). The first negotiation ended without an agreement.

The second day of recorded plea negotiations occurred on April 28, 2016. (DE# 16-2). After preliminary discussions the prosecutor repeated his offer of a 20-year cap. (DE# 16-2, p. 10). When the Petitioner mentioned his wife's case, the prosecutor reiterated that he was not going to discuss her case. (DE# 16-2, p. 11). Later, the Petitioner counter-offered to plead guilty with a 90-month cap on the sentence. (DE# 16-2, p. 35). He explained that he still had to go see Judge Lynch (a federal magistrate judge). (DE# 16-2, p. 35). **The prosecutor explained he had no control over that**. (DE# 16-2, p. 35). **The Petitioner understood that**. (DE# 16-2, p. 35). The prosecutor offered that the Petitioner could enter a plea up to 20 years and he would not recommend more than 12 years. (DE# 16-2, p. 40). The prosecutor agreed to drop all but the witness tampering, racketeering and money laundering charges. (DE# 16-2, p. 40).

**The Petitioner's standby counsel advised him that whatever sentence the state imposed would be in addition to what the federal court imposed.** (DE# 16-2, p. 40). **The prosecutor explained that the agreement could recommend that the state sentence be made concurrent to the federal sentence with the caveat that he could not control what the federal court did.** (DE# 16-2, p. 41). The Petitioner responded, "Right." (DE# 16-2, p. 41). The prosecutor opined that he did

not see the federal authorities running his sentence consecutive, again with the caveat, "[B]ut I don't' know. I'm not a federal attorney." (DE# 16-2, p. 42). The Petitioner responded:

> **Well, the thing of it is, it was just simply have me plead in this case, don't sentence me like you didn't sentence Gonzalez yet and I would go up there to -- to Lynch and say, okay, sentence me, we have all this time served here, he would sentence me to it. And then I would come back and you would be running concurrent to him. And that's the way that's done. Otherwise it's completely discretionary and that would be fine with you**.

(DE# 16-2, p. 42). The prosecutor responded that he "would be fine with that" and that he did not want the sentences to run consecutive. (DE# 16-2, p. 42). The prosecutor went off the record to give the Petitioner an opportunity to confer with his standby counsel. (DE# 16-2, p. 45).

When the negotiations went back on the record, the Petitioner explained that he wanted to settle his case. (DE# 16-2, p. 45). He stated that he would like to agree to eight years for the state case and then go to the federal court and take his punishment. If not, he would agree to a 10-year sentence. (DE# 16-2, p. 46-47). The prosecutor rejected the eight-year offer but agreed to a cap of 15 years with a recommendation to the court that the Petitioner be sentenced to 15 years. (DE# 16-2, p. 47). Finally, it was agreed that the Petitioner would plead to the state charges so long as the state recommended a sentence of no more than 12 years. (DE#16-2, p. 48).

The next day, April 29, 2016, the state court conducted a plea colloquy. (DE# 16-3). At the start of the hearing the Petitioner asked, and was permitted, to have standby counsel appointed as counsel. (DE# 16-3, p. 4). The court then noted that the parties had agreed to a maximum sentence and that there would be a sentencing hearing in the future. (DE# 16-3, p. 5). The Petitioner agreed that he was pleading guilty and that he had not been forced, pressured or coerced. (DE# 16-3, p. 6). He stated that he was pleading in his own best interest. (DE# 16-3, p. 6). The prosecutor explained the terms of the plea, noting that it was an open plea to the court. (DE# 16-3, p. 9). The prosecutor explained that the state was agreeing that the maximum permissible sentence was twelve years and that no additional charges would be filed against the Petitioner's wife as a result of any evidence discovered while investigating the Petitioner's 2016 case. (DE# 16-3, p. 9). The prosecutor further explained that "[t]he intent of the State and the defendant is that these sentences are to run concurrently with the defendant's federal sentence in case 02-14072-CR-Middlebrooks." (DE#16-3, p. 9).

When asked if he had been promised anything different in terms of the agreement, the Petitioner responded, "Only that I would be permitted to go up and plead in front of the Honorable Judge Lynch in the federal case and then be sentenced afterwards." (DE# 16-3, p. 11). He also understood that his credit for time served would continue to accrue until sentencing. (DE# 16-3, 11-12).

The court acknowledged the agreement of the parties that the maximum sentence would be 12 years and that the state sentence would run concurrent with the federal sentence. The court stated**, "the terms of the sentencing in federal court, I don't know anything about that. I don't know what's happening there."** (DE# 16-3, p. 12).

As was intended, the federal court made the incarcerative portions of the Petitioner's federal and state sentences concurrent. However, the federal court made the Petitioner's supervised release consecutive to the state sentence.

The state court properly considered the transcript of the plea negotiations to find that the Petitioner entered the plea agreement knowing that the state had no control over the federal court's sentencing decision. The court found that the terms of the plea agreement had been explained to the Petitioner by both the prosecution and his standby defense counsel. These factual findings are supported by the record. The transcribed plea negotiations reflect that the Petitioner was advised on multiple occasions that the State had no control over whether the federal court would impose a concurrent federal sentence. To find that the Petitioner did not understand that there was no guarantee of a concurrent federal sentence would directly contradict the oral understanding of the parties.

The petition should be denied as the state court's ruling was based on reasonable factual findings and was not contrary to, or an unreasonable application of controlling Supreme Court precedent.

## VI. Certificate of Appealability

As amended effective December 1, 2009, §2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. §2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rules Governing §2254 Proceedings, Rule 11(b), 28 U.S.C. foll. §2254.

After review of the record, Petitioner is not entitled to a certificate of appealability. "A certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). To merit a certificate of appealability, Petitioner must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise. *Slack v. McDaniel*, 529 U.S. 473, 478 (2000). *See also Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir. 2001). Because the claims raised are clearly without merit, Petitioner cannot satisfy the *Slack* test.

## VII. Conclusion

Based upon the foregoing, it is recommended that this petition for writ of habeas corpus be denied, that no Certificate of Appealability issue and the case be closed.

Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the court. Failure to do so will bar a *de novo* determination by the District Judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn,* 474 U.S. 140, 149 (1985); *RTC v. Hallmark Builders, Inc.,* 996 F.2d 1144, 1149 (11th Cir. 1993).

SIGNED this 14th day of May, 2019.

_____
UNITED STATES MAGISTRATE JUDGE

cc:    Anthony Laterza
       938802
       Mayo Correctional Institution
       Inmate Mail/Parcels
       8784 US Highway 27 West
       Mayo, FL 32066
       PRO SE

       Allen R. Geesey
       Office of the Attorney General
       Criminal Appeals
       1515 North Flagler Drive
       Suite 900
       West Palm Beach, FL 33401