**ANTHONY LATERZA**,

    Petitioner,

v.

**MARK S. INCH**,[1]

    Respondent.

_____/

# ORDER

On November 3, 2017, the Petitioner, Anthony Laterza ("Laterza"), filed a *pro se* Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus (the "Petition") [ECF No. 1]. On January 3, 2019, and pursuant to Administrative Order 2019-2, the Clerk reassigned the case to United States Magistrate Judge Lisette M. Reid for a ruling on all pre-trial, non-dispositive questions and for a report and recommendation on any dispositive matters [ECF No. 31]. On May 14, 2019, Judge Reid issued a Report and Recommendation ("R&R"), in which she suggested that this Court deny both the Petition and the Petitioner's request for a Certificate of Appealability [ECF No. 35]. Because the Petitioner filed timely objections to the R&R ("Objections") [ECF No. 39], the Court must review the R&R *de novo*. *See* FED. R. CIV. P. 72(b)(3).

In his Petition, Laterza asks this Court to adjudicate a narrow issue: whether he should be permitted to withdraw the plea agreement he signed in two state-court criminal matters[2] because of a *consecutive* term of supervised release he received for a separate federal crime.

---

[1] Mark S. Inch is the Secretary of the Florida Department of Corrections and is thus the proper Respondent here. He should, therefore, be substituted in as the Respondent in this case under Federal Rule of Civil Procedure 25(d)(1). The Clerk shall **DOCKET** this substitution.

[2] These two cases are 2011-CF-1935 and 2016-CF-2724—both in the Fifteen Judicial Circuit for

## I. THE FACTS

On April 29, 2016, the Petitioner entered into a plea agreement with the State of Florida (the "State") to resolve two pending criminal cases. R&R at 2. Because the Petitioner was proceeding *pro se*, the plea negotiations, which took place over the course of two days, were recorded and transcribed pursuant to Florida Rule of Criminal Procedure 3.171(b)(2). *Id.* In the plea agreement the Petitioner signed,[3] both parties agreed that "the intent of the State and the Defendant" was for the Petitioner's state-court sentences to run concurrently with his upcoming federal sentence.[4] *See* Case No. 02-14072-CR-Middlebrooks. *Id.* Pursuant to this plea agreement, and without objection,[5] on July 5, 2016, the Petitioner pled guilty in state court to charges of racketeering, money laundering, and tampering with a witness. *Id.* That same day, a state-court judge sentenced the Petitioner to two concurrent, ten-year prison terms—thus resolving both of the Petitioner's state-court matters. *Id.*

Unfortunately for the Petitioner, on May 23, 2016, before he was sentenced in the state-court cases, the Petitioner appeared before the Honorable Donald L. Graham[6] at a sentencing hearing for his federal violation of supervised release. *Id.* n. 2; *see also* State's Omnibus Response to [Petitioner's] Motion to Withdraw Plea [ECF No. 15-3 at 3]. Judge Graham sentenced the Petitioner to 18 months of imprisonment (to be served concurrently with his forthcoming state-court sentences), followed by a five-year term of supervised release. *Id.* Unlike the term of

---

Palm Beach County, Florida.
[3] *See* "Plea Agreement" [ECF No. 15-2 at 251].
[4] This federal sentence—which stemmed from the Petitioner's state-court arrest—was for the Petitioner's violations of his supervised release in a previous federal case before the Honorable Donald M. Middlebrooks.
[5] The Petitioner first moved to withdraw his state court plea on July 31, 2016. *See* [ECF No. 15-2 at 283-284].
[6] Although the original federal case was before Judge Middlebrooks, the record reflects that Judge Graham imposed the federal sentence at issue here.

imprisonment, however, Judge Graham ordered that the term of supervised release was to "run consecutive to any term of probation or supervision imposed in the Defendant's State of Florida cases . . . ." *Id.*

The Petitioner subsequently moved to withdraw his state-court plea agreement because, he said, Judge Graham's imposition of a *consecutive* term of supervised release violated the state-court parties' "intent." *Id.* at 3. In opposing the Petitioner's motion, the State pointed to the transcripts of the plea negotiations, which made clear to the Petitioner that nothing in the state-court plea agreement could "force" Judge Graham to impose a *concurrent* sentence. *Id.* Relying, in part, on these transcripts, the state trial and appellate courts roundly rejected the Petitioner's efforts to withdraw his plea. *Id.* at 3-4. This Petition followed. *Id.* at 4.

## II. ANALYSIS

The Petitioner bears the burden of establishing either that (1) a decision of the state court was contrary to, or involved an unreasonable application of, federal law, as determined by the Supreme Court, or (2) a decision of the state court was based on an unreasonable determination of the facts in light of the evidence presented to the court. *See* 28 U.S.C. § 2254(d). *See also Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). In this way, Section 2254(d) sets out a "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (cleaned up). To succeed on a petition under § 2254, then, a petitioner must show that the state court's decision was "objectively unreasonable." *Rimmer v. Sec'y, Fla. Dep't of Corr.*, 876 F.3d 1039, 1053 (11th Cir. 2017); *Tharpe v. Warden*, 834 F.3d 1323, 1338 (11th Cir. 2016) ("Federal courts may grant habeas relief only when a state court blundered in a manner so well understood and comprehended in existing law and was so lacking in justification that there is no possibility fair-minded jurists could disagree.")

(cleaned up). Under this standard, even state-court decisions that, on review, appear wrong—or even clearly erroneous—will not be deemed an unreasonable application of federal law. *Id*. Indeed, even decisions a state court judge has made summarily, without any reasoning, are entitled to deference under § 2254(d). *See Harrington v. Richter*, 562 U.S. 86, 98 (2011).

The Petitioner claims that Judge Graham's imposition of a *consecutive* term of supervised release violated his plea agreement and rendered his plea involuntary. R&R at 8. But both the state prosecutor and the Petitioner's own standby counsel warned the Petitioner that the state-court plea agreement could not guarantee him a *concurrent* sentence in his federal case. As the transcripts make plain:

> MR. LATERZA: . . . [I]f I go in there and – and I'm pleading up to the [federal] judge, and the judge says, well, you know . . . after all these years, now this . . . I don't think that would – 90 months is –
> STANDBY COUNSEL: 7 ½ years.
> MR. LATERZA 7 ½.
> STANDBY COUNSEL: ***Plus whatever you get in federal court***, which you don't know. It could be time served or you could get a – I don't know what the recommended range is, I'm sure it's – it could involve some federal prison time as well.
> PROSECUTOR: We can make the term of plea -- I [can] recommend it run concurrent to any federal sentence. ***I can't control the feds***, but
> MR. LATERZA: Right.

"Plea Negotiations" [ECF No. 16-2 at 41.] (emphasis added).

At his plea colloquy on April 29, 2016, the Petitioner admitted that no one had forced, pressured, or coerced him into entering his guilty plea, and that he was pleading guilty freely and voluntarily. "Plea Colloquy" [ECF No. 16-3 at 6]. When the state-court judge asked him whether he had received any additional promises other than those contained in his plea agreement, the Petitioner said "only that I would be permitted to go up and plead in front of the [federal judge] in the federal case and then be sentenced [by the state court] afterwards." *Id.* at 11. Notably, nothing in the plea agreement—or at the plea colloquy—suggested that either party could withdraw from

4

the plea agreement if the federal judge imposed a *consecutive* sentence. Quite to the contrary, at the plea colloquy, the state-court judge made clear that "[t]he terms of the sentencing in federal court, I don't know anything about that. I don't know what's happening there." *Id.* at 12. Hearing this, neither the Petitioner nor his standby counsel contended, as the Petitioner does here, that the plea agreement was somehow contingent on the federal judge imposing only a *concurrent* sentence. Instead, standby counsel asked only that the state judge reset the state-court sentencing for 60 days "with the goal of getting [the federal case] resolved." *Id*. The full exchange went like this:

> THE COURT: The terms of the sentencing in federal court, I don't know anything about that. I don't know what's happening there.
> STANDBY COUNSEL: Well, the thing that's contemplated there is that we'll set – we're going to ask the Court to set sentencing in this case in about 60 days with the goal of getting [Laterza] up to Fort Pierce to be – to get that matter resolved.
> THE COURT: To get that resolved. Okay.
> STANDBY COUNSEL: And then come back.
> THE COURT: That's fine. I have no problem. Other than those clarifications, any discrepancies in your understanding of the agreement versus that you just heard?
> MR. LATERZA: None. There isn't any, Your Honor.
> THE COURT: Okay.

*Id.*

In his Objections, the Petitioner now says that his federal sentence "defeated" the terms of his plea agreement—and that this Court should void his plea agreement on the ground of "specific non-performance." Objections at 1. But it is well-established that a defendant cannot, by an agreement with state prosecutors, "compel the federal government to impose a sentence that is concurrent with an existing state sentence." *Hawley v. United States*, 898 F.2d 1513, 1514 (11th Cir. 1990). A federal district court is "not bound by the state court's intentions and [is] free to use its own discretion in applying federal law to determine the conditions of [a defendant's] sentence." *Id.* And the Petitioner well understood this law at the time he entered his guilty plea because both

his standby counsel and the state prosecutor told him, in no uncertain terms, that his state-court plea could *not* compel the federal judge to impose a *concurrent* sentence. While the Petitioner and his standby counsel may have *hoped* for a *concurrent* federal sentence—a hope that, perhaps, the state prosecutor shared—even the joint aspirations of the parties to a state-court plea agreement cannot bind a federal judge.[7] And there is no indication, as the Petitioner seems to suggest,[8] that either the state prosecutor or the state judge in any way breached the terms of the plea agreement. Nor does the record reveal that anyone ever misrepresented to the Petitioner the scope of a federal court's authority to impose a *consecutive* sentence—even where, as here, the parties to the state plea agreement hoped for a *concurrent* sentence. *Cf. Finch v. Vaughn*, 67 F.3d 909, 915 (11th Cir. 1995) (holding that a defendant's guilty plea is not knowing, intelligent, or voluntary where his counsel represents, as part of a state-court plea negotiation, that the defendant's upcoming federal sentence *will* run concurrent to his state sentence).

### III. CONCLUSION

The record in this case—in particular, the transcribed plea negotiations and the plea colloquy that followed—amply support the R&R's findings. As the R&R concluded, "[t]o find that the Petitioner did not understand that [his plea agreement contained] no guarantee of a concurrent federal sentence would directly contradict the oral understanding of the parties." R&R at 15. Because, in short, the state court's decision to uphold the plea agreement was based on reasonable factual findings and was not "contrary to" or "an unreasonable application of"

---

[7] That the Petitioner's state-court sentence had not yet been imposed was, it goes without saying, immaterial to Judge Graham's decision to disregard the state-court plea agreement. *See United States v. Ballard*, 6 F.3d 1502, 1509 (11th Cir. 1993).

[8] In his Objections, the Petitioner inappositely refers to *Puckett v. United States*, 556 U.S. 129 (2009) and *Santobello v. New York*, 404 U.S. 257 (1971)—both of which loosely stand for the here-uncontested proposition that prosecutors, no less than defendants, must abide by the terms of plea agreements.

controlling Supreme Court precedent,[9] the Petition should be denied. Accordingly, the Court hereby

**ORDERS AND ADJUDGES** that the Report and Recommendation [ECF No. 31] is **ACCEPTED AND ADOPTED**. The Petition [ECF No. 1] is **DENIED**. No certificate of appealability shall issue.[10] The Clerk of the Court is instructed to **CLOSE** the case, and any pending motions are **DENIED as moot**.

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 30th day of August 2019.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:   Anthony Laterza, *pro se*

---

[9] *See generally Williams*, 529 U.S. 362 (2000).

[10] A state prisoner seeking a writ of habeas corpus has no "absolute entitlement" to appeal a district court's denial of his petition. *See* 28 U.S.C. § 2253(c). Instead, the state prisoner must obtain a certificate of appealability ("COA") from a "circuit justice" or "judge." *Id.* A COA may therefore issue only where the petitioner has made a "substantial showing of the denial of a constitutional right." *Id.* To do this, the Supreme Court has explained, a petitioner must "sho[w] that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 336, (2003) (cleaned up). Because the Court finds that "reasonable jurists could [not] debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further,'" the Petitioner's request for a COA is **DENIED**.